EXHIBIT 1

DANIEL R. HAYWARD, WSBA #51293
Hayward Law, PLLC
905 West Riverside Avenue, Suite 505
Spokane, WA 99201
(509) 838-9146
dan@haywardlaw.net
Attorney for Plaintiff

COPY
Original Filed

NOV 0 2 2018

Timothy W. Fitzgerald
SPOKANE COUNTY CLERK

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR THE COUNTY OF SPOKANE

| | |
|---|---|
| SUZANNE ALEXANDRA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>GERBER COLLISION & GLASS LLC, an Illinois corporation,<br><br>Defendant. | NO. **18204863-32**<br><br>COMPLAINT FOR DAMAGES FOR DISCRIMINATION BASED ON SEX AND RETALIATORY DISCHARGE |

## I. INTRODUCTION

1.1    Under the Washington Law Against Discrimination ("WLAD"), RCW 49.60, the right to be free from discrimination because of sex is recognized as and declared to be a civil right. This right includes but is not limited to: (1) The right to obtain and hold employment without discrimination; (2) the right to assert legally protected rights without retaliation; and (3) the right to be protected from hostile work environments.

COMPLAINT FOR DAMAGES FOR DISCRIMINATION
BASED ON SEX AND RETALIATORY DISCHARGE • Page 1

HAYWARD LAW, PLLC
905 W. Riverside Ave, Suite 505
Spokane, WA 99201
Telephone: (509) 838-9146

1.2 Washington's wage and hour laws create a duty for employers to provide employees with overtime pay, rest breaks, and lunch breaks. RCW 49.12; 49.46. Civil and criminal liability attaches when an employer willfully denies these legal rights to their employees. *Id.*; RCW 49.52.050.

1.3 Washington law places liability on employers when an employee is harmed by their manager and employer was aware that the manager was unfit for their job. *Scott v. Blanchet High School*, 50 Wn. App. 37, 747 P.2d 1124 (Div. I 1987) (negligent retention); *Bratton v. Calkins*, 73 Wn. App. 492 (Div. III, 1994) (vicarious liability).

1.4 Gerber Collision, LLC, violated these civil rights. While working for Gerber, Suzanne Alexandra experienced physical, verbal, emotional and financial abuse from her manager, Lori Fritzsche.

1.5 The abusive conduct started as early as Ms. Alexandra's second day of work and continued during her entire term of employment. Ms. Fritzsche used her position of authority to harass, belittle, ridicule, wound, and toy with Ms. Alexandra. Ms. Fritzsche would slap Ms. Alexandra's shoulders, press her fingernails into her wounds, hold her hands against a table while giving instruction, and use her belly to rub up against Ms. Alexandra. Ms. Fritzsche was aware that Ms. Alexandra had sutures on her shoulder from a recent medical procedure, yet she continuously tried to slap and jab Ms. Alexandra's shoulder.

1.6 The abuse did not stop at the physical and emotional level. Ms. Alexandra was not allowed to take rest breaks, which are mandated by law. Eventually, she would be allowed to take breaks, but they would be shortened by her manager.

1.7 Ms. Alexandra was afforded a lunch, but during her employment, her lunch break became a malicious tool for Ms. Fritzsche to manipulate and control Ms. Alexandra. On more

than one occasion, Ms. Fritzsche would absent from the office for long periods and force Ms. Alexandra to wait till late in the day to go to lunch. On other occasions, Ms. Alexandra's lunch was delayed for no apparent business need.

    1.8    Early on, HR was aware of the abuse but took no action to stop it. Gerber's Regional Manager would later become aware of the abuse, but also take no action. Although HR and the Regional Manager told Ms. Alexandra that her supervisor had a history of difficulty with employees, Ms. Alexandra would later be told that must have done something wrong to provoke her manager. Essentially, Ms. Alexandra was told that she deserved to be abused while in the workplace.

    1.9    After Gerber rebuffed Ms. Alexandra's barrage of complaints and authorized the abuse, her manager was emboldened. Ms. Fritzsche then reduced Ms. Alexandra's hours, took her shop keys, and later fired her.

    1.10    Ms. Alexandra never asked to be physically, emotionally, verbally, or financially abused. She came to work to do a job. When she complained about how she was being treated she was told that it was her fault. No employee should be forced to experience and endure this type of intentional and illegal conduct.

    1.11    Ms. Alexandra seeks all remedies available by law for this abusive and illegal conduct.

## II. PARTIES

    2.1    Plaintiff SUZANNE ALEXANDRA is a resident of Spokane County and was a resident during all material times. Ms. Alexandra was employed by Gerber Collision, LLC. Ms. Alexandra is entitled to protection against discrimination and retaliation pursuant to the WLAD.

2.2  Defendant GERBER COLLISION, LLC ("Gerber") is incorporated in the state of Illinois with multiple locations across the United States including Spokane County. The acts and omissions by Gerber's employees alleged herein were done in the performance of their official duties as employees of Gerber and were within the scope of their employment.

### III. JURISDICTION AND VENUE

3.1  This Court has subject matter and personal jurisdiction over the parties to this matter pursuant to RCW 4.28.185 and RCW 4.12.020, and/or by virtue of their residence or domicile and operation in the State of Washington.

3.2  Venue is proper in Spokane County, Washington, pursuant to RCW 4.12.020, as the tortious acts and damages complained of occurred in Spokane County.

### IV. STATEMENT OF FACTS

4.1  On January 22, 2018, Ms. Alexandra was hired by Gerber Collision, LLC ("Gerber"). Her manager was Lori Fritzsche.

4.2  On January 23, 2018, Lori Fritzsche, began slapping and jabbing Ms. Alexandra's shoulders. Ms. Fritzsche had very long fingernails and would dig them into Ms. Alexandra's shoulders. This was particularly disturbing because Ms. Alexandra had notified her manager that she had sutures on her shoulder from a recent medical procedure.

4.3  Ms. Fritzsche would also snap her fingers, raise her voice, and refer to Ms. Alexandra as "Missy." Still, on her second day of work, Ms. Fritzsche held Ms. Alexandra's hands on the table while she raised her voice at her. This type of conduct was exceptionally distasteful because it was only Ms. Alexandra second day on the job.

4.4  On January 24, 2018, Ms. Fritzsche slapped Ms. Alexandra on her shoulders, berated her, and used profane language in the presence of vendors.

COMPLAINT FOR DAMAGES FOR DISCRIMINATION
BASED ON SEX AND RETALIATORY DISCHARGE • Page 4

HAYWARD LAW, PLLC
905 W. Riverside Ave, Suite 505
Spokane, WA 99201
Telephone: (509) 838-9146

4.5     On January 25, 2018, in a threatening tone, Ms. Fritzsche made it clear to Ms. Alexandra that she had better not make any mistakes. This put Ms. Alexandra is a difficult position because she had difficulty receiving training from her manager. When Ms. Alexandra went to her manager for help, her manager would quickly cut her off. Her manager would often roll her eyes and start reading a magazine instead of listening to her employee.

4.6     On January 26, 2018, Ms. Alexandra arrived at work and before she can clock in, her manager rushes at her and berates her for the events of the previous day. The whole day, Ms. Alexandra is slapped and jabbed on her shoulders by her manager.

4.7     Ms. Alexandra carefully asked her manager for some leeway because it was only her first week on the job. In response, her manager told her never to talk to her like that again and let her know that she had better things to do than train a new employee.

4.8     Ms. Alexandra called corporate HR and spoke to Valerie Schiller concerning the physical and verbal abuse from her manager. Ms. Alexandra was not eager to confront her manager for fear that she might lose her job or suffer further abuse.

4.9     Ms. Schiller said that she would talk to Ms. Fritzsche. Ms. Schiller wanted Ms. Alexandra to follow up with her at a later date to determine if anything had changed.

4.10    On January 29, 2018, Ms. Alexandra worked a ten-hour shift. When she tried to take a break, her manager bullied her and told her she could not take a break. Her manager told that she didn't need breaks because she could take them while at her desk.

4.11    Later that day, Ms. Fritzsche would begin rubbing her belly on Ms. Alexandra's forearms when she was on the phone and also when she was typing. Ms. Fritzsche still continued to poke her nails into Ms. Alexandra's shoulders.

COMPLAINT FOR DAMAGES FOR DISCRIMINATION
BASED ON SEX AND RETALIATORY DISCHARGE • Page 5

HAYWARD LAW, PLLC
905 W. Riverside Ave, Suite 505
Spokane, WA 99201
Telephone: (509) 838-9146

4.12  Ms. Fritzsche abusive and sexual contact did not stop. Ms. Fritzsche began referring to Ms. Alexandra as "Missy." In an effort to curb these abusive encounters, Ms. Alexandra attempted to use email to correspond with her manager. When she saw her manager coming, she would roll her chair in front of her so that she could not be assaulted. Unfortunately, Ms. Fritzsche would evade her chair and consistently respond to emails in person.

4.13  Early in February, Ms. Alexandra continued to keep HR updated on Ms. Fritzsche vile treatment, but no solution was offered.

4.14  By this time, Ms. Alexandra was acutely aware that her fellow male colleagues were not openly abused. She also noticed her male colleagues could take rest breaks at will. She would later discover that several female employees preceded her over a very short time frame.

4.15  As February unfolded the abuse and harassment continued. Ms. Fritzsche brazenly and unapologetically abused Ms. Alexandra in the presence of other employees and vendors. This abusive conduct amplified Ms. Alexandra's pain and anguish. It appeared that she would have to endure the abuse because Gerber was unwilling to stop her manager.

4.16  On February 16, 2018, Ms. Alexandra spoke with Scott Renner, Regional Marketing Manager, about the ongoing abuse she has experienced. Unfortunately, Mr. Renner was not able to discuss the abusive situation until almost two weeks later.

4.17  On February 19, 2018, Ms. Alexandra sent an email to her manager and told her that she wanted to take her breaks. Her manager told her she can start taking breaks at 10 AM and 3 PM.

4.18    When Ms. Alexandra tried to take her 10 AM break, she was told it can only be seven minutes and she could make it up in the afternoon. Ms. Alexandra took her shortened break and returned to work. That afternoon she is not allowed to take the rest of her break.

4.19    On February 28, 2018, Ms. Alexandra met with Mr. Renner. Mr. Renner said that in the past he had talked with Ms. Fritzsche about her treatment of employees. He also indicated that she is "difficult" to work for.

4.20    The abuse continued into March. Ms. Alexandra followed up with Mr. Renner because there had not been any change in Ms. Fritzsche's abusive behavior. Mr. Renner informed Ms. Alexandra that she must be doing something to provoke her manager.

4.21    Mr. Renner then told Ms. Alexandra that she is replaceable and that the company will continue to rehire for her position because Ms. Fritzsche is very profitable to Gerber.

4.22    On March 7, 2018, Ms. Alexandra clocked out and took her scheduled lunch. Since she can't find her manager, she informed her manager by text. Ms. Fritzsche responded by telling Ms. Alexandra not to go to lunch because she was too busy filling a paint order. Ms. Fritzsche does not state that there is a pressing business matter that would require Ms. Alexandra to delay her lunch. Ms. Alexandra is confused and believed that her manager is trying to toy with her since she had filed a complaint.

4.23    On March 8, 2018, Ms. Alexandra renewed her request by email to take breaks. Her manager does not respond but is later told that she can't leave for lunch until she is given permission.

4.24    Later that day, Ms. Fritzsche poked and jabbed Ms. Alexandra while on the phone. At this point, Ms. Alexandra is so frustrated she told her manager to stop touching her.

Ten minutes later, Ms. Fritzsche takes Ms. Alexandra's shop keys and tells her she is no longer allowed to open the shop.

4.25 March 9, 2018, Ms. Fritzsche reduced Ms. Alexandra's work hours. Ms. Alexandra is confused because she was guaranteed forty hours a week plus five hours of overtime. When Ms. Alexandra inquired about the change, her manager said, "I am the manager and I can do what I want."

4.26 On March 12, 2018, Ms. Alexandra is terminated from her position by Ms. Fritzsche and Mr. Renner. She is told that they are not happy with her work and she does not appear to be happy. Ms. Alexandra told them that she is certainly not happy and does not like to be verbally and physically abused her manager. Mr. Renner stopped the conversation and told her that there will be no further discussion on the matter.

4.27 Ms. Alexandra's paychecks did not reflect over-time pay for working through rest breaks.

## V. FIRST CAUSE OF ACTION

### SEX DISCRIMINATION IN VIOLATION OF THE WLAD AND FEDERAL ANTI-DISCRIMINATION LAW

5.1 Plaintiff repeats each and every allegation contained in the preceding paragraphs as though fully set forth herein and further alleges the following.

5.2 Under the WLAD, it is an unfair practice for an employer to discriminate against any person in the terms or conditions of employment because of a person's sex or gender, to include sexual harassment. RCW 49.60; *see* 42 U.S.C § 2000e-2.

5.3 People experiencing hostile environments at work are faced with an imbalance of power where an "employer implicitly, but effectively, [makes] their endurance of sexual intimidation a term or condition of their employment." *Glasgow v. Georgia Pacific Corp.*, 103

Wn.2d 401, 405 (1985). Sexual harassment creates a hostile work environment that "injects the most demeaning sexual stereotypes into the general work environment" and "represents an intentional assault on an individual's innermost privacy."

5.4   Liability is established when a manager or owner directly harasses a subordinate. Liability is also established when a co-worker harasses an employee and the employer authorized, knew, or should have known of the harassment and failed to take prompt corrective action.

5.5   Ms. Alexandra experienced shocking levels of physical, verbal, emotional, and financial abuse. This treatment was not apparent with Ms. Alexandra's male colleagues, who were generally treated with respect and not abused in any way. Ms. Alexandra's manager had a track record with her prior female employees; however, her manager was allowed to continue working for Gerber.

5.6   The sexual harassment was sufficiently pervasive and severe as to alter the conditions of Ms. Alexandra's employment and to create a hostile, intimidating, and/or abusive work environment.

5.7   Ms. Alexandra spoke with upper management and HR, but nothing was done to curb the abusive behavior of her manager.

5.8   The sexual harassment and assault were condoned and permitted by Gerber, in a manner which was grossly negligent, reckless, willful, malicious, and deliberately indifferent to the rights of Ms. Alexandra to a safe workplace free of discrimination and abuse. Gerber is liable to Ms. Alexandra for its violations of the WLAD and federal law.

5.9   As a proximate cause of Defendants' harassment, discrimination, hostile work environment, and subsequent unlawful termination, Plaintiff has been damaged in amounts to be

COMPLAINT FOR DAMAGES FOR DISCRIMINATION
BASED ON SEX AND RETALIATORY DISCHARGE • Page 9

HAYWARD LAW, PLLC
905 W. Riverside Ave, Suite 505
Spokane, WA 99201
Telephone: (509) 838-9146

proven at the time of trial, to include but not limited to severe emotional distress and economic losses. Plaintiff is also entitled to reasonable attorney's fees and costs.

5.10    Defendant engaged in discriminatory conduct with malice or reckless indifference to Plaintiff's legal rights and the injuries caused by such conduct, with knowledge that its conduct might be in violation of federal anti-discrimination law, entitling Plaintiff to an award of punitive damages. 42 U.S.C 1981a(b)(a).

## VI.    SECOND CAUSE OF ACTION

## RETALIATION IN VIOLATION OF THE WLAD AND TITLE VII

6.1    Plaintiff repeats each and every allegation contained in the preceding paragraphs as though fully set forth herein and further allege the following.

6.2    Federal and state laws forbid retaliation against employees who oppose unlawful employment practices. *See* RCW 49.60.210(1); 42 U.S.C. § 2000e-3(a).

6.3    To establish a prima facie case of retaliation under either RCW 49.60 or Title VII, an employee must show that (1) she was engaged in a statutorily protected activity; (2) she was subject to an adverse employment action; and (3) retaliation was a substantial motive behind the adverse employment action. *Estevez v. Faculty Club of Univ. of Wash.*, 129 Wn. App. 774, 797, 120 P.3d 579 (2005); RCW 49.60.210.

6.4    Ms. Alexandra's complaints of harassment were unquestionably statutorily protected activity. She unquestionably suffered an adverse employment action, as she was (1) terminated from her job; (2) not provided breaks; (3) forced to give up her shop keys; (4) forced to acquiesce to her manager's manipulation of her lunch schedule; and (5) denied guaranteed hours and over time. Retaliation was plainly a substantial, if not the only, factor behind these

adverse actions, as these actions increased in frequency immediately after Ms. Alexandra complained about harassment.

6.5    As a direct and proximate cause of Defendants' unlawful conduct, Ms. Alexandra has been damaged in amounts to be proven at the time of trial, to include but not limited to severe emotional distress and economic losses. Plaintiff is also entitled to reasonable attorney's fees and costs.

## VII.    THIRD CAUSE OF ACTION

## NEGLIGENT SUPERVISION AND RETENTION

7.1    Plaintiff repeats each and every allegation contained in the preceding paragraphs as though fully set forth herein and further allege the following.

7.2    An employer is liable for negligent supervision and retention when: (1) an employee is unfit or has a propensity for inappropriate behavior; (2) the employer is aware of the employee being unfit or has a propensity to be inappropriate; (3) employer retains unfit employee and does not exercise reasonable care; (4) unfit employee proximately causes damage to plaintiff. *Scott v. Blanchet High School*, 50 Wn. App. 37, 747 P.2d 1124 (Div. I 1987). Based upon information and belief, the conduct of Ms. Fritzsche was foreseeable. Her position lends itself to working closely with other employees.

7.3    Gerber was aware that their manager had the propensity to act inappropriately because she had a record of doing so. HR and another manager had also been notified about the abusive behavior. Gerber allowed their manager to continue to abuse employees because she made the company a lot of money. Gerber's desire for financial gain caused it to overlook the law. Ms. Alexandra was emotionally, physically, and financially harmed by Gerber's negligence.

COMPLAINT FOR DAMAGES FOR DISCRIMINATION
BASED ON SEX AND RETALIATORY DISCHARGE • Page 11

HAYWARD LAW, PLLC
905 W. Riverside Ave, Suite 505
Spokane, WA 99201
Telephone: (509) 838-9146

7.4　As a direct and proximate cause of Defendants' unlawful conduct, Ms. Alexandra has suffered economic and non-economic damages in an amount to be proven at trial.

## VIII.　FOURTH CAUSE OF ACTION

### NEGLIGENCE – RESPONDEAT SUPERIOR

8.1　Plaintiff repeats each and every allegation contained in the preceding paragraphs as though fully set forth herein and further allege the following.

8.2　An employer is vicariously liable if the employee's wrongful acts were done during the course of the employee's employment. *Bratton v. Calkins*, 73 Wn. App. 492 (Div. III, 1994). The analysis turns on: (1) Whether the act was foreseeable; (2) whether the act related to or connected with the duties of the employee; and (3) whether the act was committed within the work-related limits of time and place.

8.3　Ms. Fritzsche's position required constant communication with her subordinates. It is foreseeable that she could improperly conduct herself with her employees. Ms. Fritzsche harassed and assaulted Ms. Alexandra from a position of authority while on the clock in the workplace. Ms. Alexandra notified HR and another manager about the conduct.

8.4　This abuse was interwoven as discipline for Ms. Alexandra's. Ms. Alexandra complained over three months but was terminated in favor of leaving the abuser in her role.

8.5　Therefore, Gerber is vicariously liable for Ms. Fritzsche's actions.

8.6　As a direct and proximate cause of Defendants' unlawful conduct, Ms. Alexandra has suffered economic and non-economic damages in an amount to be proven at trial.

## IX.　FIFTH CAUSE OF ACTION

### WASHINGTON STATE WAGE AND HOUR LAW

COMPLAINT FOR DAMAGES FOR DISCRIMINATION
BASED ON SEX AND RETALIATORY DISCHARGE • Page 12

HAYWARD LAW, PLLC
905 W. Riverside Ave, Suite 505
Spokane, WA 99201
Telephone: (509) 838-9146

9.1 Washington law requires employers to provide their employees with rest breaks and meal breaks. RCW 49.12; WAC 296-131-020; *Alvarez v. IBP, Inc.*, 339 F.3d 894, 913 (2003). When an employee does not receive a break, their workday is extended by the time of the break. *Wingert v. Yellow Freight Systems, Inc.*, 146 Wn.2d 841, 849 (2002). Therefore, triggering overtime pay requirements under RCW 49.46. Willful violations of the preceding law are subject to double damages and potential criminal liability. RCW 49.52.050 & .070.

9.2 During Ms. Alexandra's tenure with Gerber, she was not properly afforded her rest breaks even after multiple verbal and written requests. Gerber had a duty to provide these breaks regardless of whether Ms. Alexandra requested them.

9.3 Ms. Alexandra did not agree to forfeit her breaks. Gerber did not properly compensate Ms. Alexandra for her time she worked during her breaks.

9.4 Therefore, Gerber is liable for paying Ms. Alexandra for her time worked during her breaks.

9.5 As a direct and proximate cause of Defendants' unlawful conduct, Ms. Alexandra has suffered economic and non-economic damages in an amount to be proven at trial.

## X. PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment and relief against Defendants, as follows:

1. That Defendants be held liable to Plaintiff for all damages suffered in an amount to be proven at the time of trial;

2. For special damages including back pay, front pay, pre- and post-judgment interest, travel expenses, relocation expenses, lost benefits of employment, adverse tax consequences of any award for economic damages, liquidated damages under both federal and

COMPLAINT FOR DAMAGES FOR DISCRIMINATION
BASED ON SEX AND RETALIATORY DISCHARGE • Page 13

HAYWARD LAW, PLLC
905 W. Riverside Ave, Suite 505
Spokane, WA 99201
Telephone: (509) 838-9146

Washington law for willful violations as it relates to the improper withholding of wages and benefits, and exemplary damages to be proven at trial;

3. For general damages, including but not limited to, past and future emotional distress, humiliation, loss of enjoyment of life, pain and suffering, personal indignity, embarrassment, fear, anxiety and/or anguish, experienced and with reasonable probability to be experienced by Plaintiff in the future in an amount to be proven at trial;

4. For punitive damages because Defendant acted with knowledge and malicious intent against the rights of Plaintiff. 42 U.S.C. §1981a(b)(1);

5. For reasonable attorney fees and costs pursuant to RCW 49.60;

6. For statutory costs, disbursement, attorney fees incurred herein, including prejudgment interest, as permitted by law; and,

7. For such other and further relief as the Court deems just and proper.

DATED this __2__ day of November 2018.

Hayward Law, PLLC

_____
Daniel R. Hayward, WSBA #51293
905 W Riverside Ave, Suite 505
Spokane, WA 99201
Telephone: (509) 838-9146
Email: dan@haywardlaw.net
Attorney for Plaintiff

COMPLAINT FOR DAMAGES FOR DISCRIMINATION
BASED ON SEX AND RETALIATORY DISCHARGE • Page 14

HAYWARD LAW, PLLC
905 W. Riverside Ave, Suite 505
Spokane, WA 99201
Telephone: (509) 838-9146